UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND

Civil Action No. 04-207-HRW

CHARLES BOND,                                                                            PLAINTIFF,

v.            **MEMORANDUM OPINION AND ORDER**

JO ANNE B. BARNHART
COMMISSIONER OF SOCIAL SECURITY,                          DEFENDANT.

Plaintiff has brought this action pursuant to 42 U.S.C. § 405(g) to challenge a final decision of the Defendant denying Plaintiff's application for a period of disability and disability insurance benefits. The Court having reviewed the record in this case and the dispositive motions filed by the parties, and being otherwise sufficiently advised, for the reasons set forth herein, finds that the decision of the Administrative Law Judge is supported by substantial evidence and should be affirmed.

**I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff filed her current application for disability insurance benefits on December 11, 2002 (Tr. 12), alleging disability beginning on March 31, 2001, due to knee injury and total knee replacement, gout, asthma, hypertension, arthritis, and epicondylitis of the right elbow (Tr. 13).  The application was denied initially and

on reconsideration (Tr. 12). On February 18, 2004, Administrative Law Judge Don C. Paris (hereinafter "ALJ") held an administrative hearing (Tr. 12). At the hearing, claimant, accompanied by counsel, testified, as did Harry Tanzey, a vocational expert (hereinafter "VE") (Tr. 12).

Plaintiff was forty-nine years old at the time of the hearing decision (Tr. 13). He has a high school education, and his past relevant work experience consists of work as a laborer and welder (Tr. 13).

At the hearing, pursuant to 20 C.F.R. § 416.920, the ALJ performed the following five-step sequential analysis in order to determine whether the Plaintiff was disabled:

> Step 1: If the claimant is performing substantial gainful work, he is not disabled.
>
> Step 2: If the claimant is not performing substantial gainful work, his impairment(s) must be severe before he can be found to be disabled based upon the requirements in 20 C.F.R. § 416.920(b).
>
> Step 3: If the claimant is not performing substantial gainful work and has a severe impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and his impairments (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is disabled without further inquiry.
>
> Step 4: If the claimant's impairment (or impairments) does not prevent him from doing his past relevant work, he is not disabled.
>
> Step 5: Even if the claimant's impairment or impairments prevent him from performing his past relevant work, if other work exists in

significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

On August 12, 2004, the ALJ issued his unfavorable decision finding that Plaintiff was not disabled (Tr. 21-22). At Step 1 of the sequential analysis, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 31, 2001, the alleged onset date of disability (Tr. 14). The ALJ then determined, at Step 2, that Plaintiff suffers from degenerative joint disease of the left knee, asthma/chronic obstructive pulmonary disease, and obesity, all conditions which he found to be "severe" within the meaning of the Regulations (Tr. 17). At Step 3, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the listed impairments in Appendix 1, Subpart P, Regulation No. 4 (Tr. 7). The ALJ determined at Step 4 that Plaintiff could perform his past relevant work as a laborer or welder during the period at issue (Tr. 20). The ALJ further concluded, at Step 5, that Plaintiff retained the residual functional capacity, reduced by certain exertional and non-exertional limitations, to perform a significant range of light work and sedentary work, as identified by the VE and within the framework of the Medical-Vocational Guidelines (Tr. 21). Accordingly, the ALJ found that Plaintiff was not disabled at Step 5 of the sequential evaluation process (Tr. 21).

The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the final decision of the Commissioner on September 22, 2004

(Tr. 4).

Plaintiff thereafter filed this civil action seeking a reversal of the Commissioner's decision. Both parties have filed Motions for Summary Judgment [Record Nos. 6 and 7], and this matter is ripe for decision.

## II. ANALYSIS

### A. Standard of Review

The essential issue on appeal to this Court is whether the ALJ's decision is supported by substantial evidence. "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"; it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). If the Commissioner's decision is supported by substantial evidence, the reviewing Court must affirm. *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). "The court may not try the case *de novo* nor resolve conflicts in evidence, nor decide questions of credibility." *Bradley v. Secretary of Health and Human Services*, 862 F.2d 1224, 1228 (6th Cir. 1988). Finally, this Court must defer to the Commissioner's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key v. Callahan,* 109 F.3d 270, 273

(6th Cir.1997).

**B.     Plaintiff's Contentions on Appeal**

Plaintiff contends that the ALJ's finding of no disability is erroneous because: (1) the ALJ failed to accord proper deference to the opinion of his treating physicians; (2) the ALJ failed to properly evaluate his subjective complaints of pain; and (3) the ALJ failed to impose a restriction based on Plaintiff's asthma and environmental limitations in posing hypothetical questions to the VE.

**C.     Analysis of Contentions on Appeal**

Plaintiff's first claim of error is that the ALJ failed to accord proper deference to the opinion of his treating physicians in assessing his residual functional capacity (Plaintiff's Motion, p. 10). The Court disagrees.

Under the regulations, the ALJ has the ultimate responsibility of assessing a claimant's RFC; thus, even though statements from medical sources about what a claimant can still do are important evidence, they are not determinative. See 20 C.F.R. §§ 404.1513(b), 404.1527, 404.1545, 404.1546(c), 416.913(b), 416.927, 416.945, 416.946(c). Indeed, "[o]pinions on some issues," such as a claimant's RFC, "are not medical opinions," ... "but are, instead, opinions on issues reserved for the Commissioner because they are administrative findings that are dispositive of a case, i.e., that would direct the determination or decision of disability." 20 C.F.F. § 404.1527(e). Although an ALJ will consider opinions from medical

sources on such issues as a claimant's RFC, "the final responsibility for deciding these issues is reserved for the Commissioner." 20 C.F.R. § 404.1527(e)(2).

The ALJ found that the Plaintiff retains the residual functional capacity to perform light work, which entails lifting up to 20 pounds, with frequent lifting of no more than 10 pounds, alternate sitting and standing at 30 minutes to one hour intervals, and occasionally pushing/pulling or use foot controls with the left lower extremity (Tr. 19). From a nonexertional standpoint, the ALJ determined that Plaintiff could only occasionally climb stairs or ramps, and never climb ladders, ropes or scaffolds; could only occasionally stoop, kneel, crouch, or crawl; and would have to avoid exposure to temperature extremes, fumes, odors, gases, or dusts (Tr. 19). The ALJ considered Plaintiff's obesity to be an exacerbating factor (Tr. 19).

Plaintiff claims that the ALJ improperly accepted the assessments of two state agency non-examining physicians with regard to Plaintiff's functional capacity rather than the assessments of his treating physicians, Dr. Karen Shields and Dr. Ralph Touma (Plaintiff's Motion, p. 19).

It is true that the medical and diagnostic opinions of treating physicians "are generally accorded substantial deference, and if the opinion is uncontradicted, complete deference." *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984). However, such deference is due "only if the treating physician's opinion is based on

sufficient medical data." *Houston v. Secretary of HHS*, 736 F.2d 365, 367 (6th Cir. 1984). In other words, the weight afforded a physician's opinion depends upon the extent it is supported by objective medical signs and laboratory findings and is consistent with the record as a whole, as well as the specialty of the medical source, and other factors. *See*, 20 C.F.R. §§ 404.1527(d), 416.927(d). A treating physician's opinions may be rejected when good reasons are identified for not accepting them. *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988).

Here, the Court notes that the ALJ specifically considered the RFC and/or disability opinions of Dr. Shields and Dr. Touma. opinions and identified reasons for not according them controlling weight (Tr. 19). Specifically, the ALJ determined the opinions of Plaintiff's treating physicians to be inconsistent with the record and Plaintiff's own statements (Tr. 16, 19, 381-91). As noted by the ALJ, Dr. Shields indicated that Plaintiff has osteoarthritis in the low back and that this condition contributed to functional limitations (Tr. 16, 385). Yet, Plaintiff never alleged low back pain at the hearing or in any of his written statements (Tr. 16, 32-67, 101-166). The ALJ further noted that Dr. Shields' treatment notes covering the period from December 1999 to July 1, 2002, indicated that Plaintiff had no problems with the spine (Tr. 16). No objective evidence, such as x-ray reports, substantiated Dr. Shields' statement (Tr. 16). To the contrary, Plaintiff's other treating physician, Dr. Touma, opined that Plaintiff had no abnormalities of

the spine. The Court concludes that the ALJ properly considered the findings in Dr. Shield's treatment notes in both rejecting Dr. Shields' opinion and in forming his RFC assessment.

The ALJ also found that Dr. Touma's RFC opinions, like those of Dr. Shield, were contradicted by the doctor's treatment notes. Dr. Touma advised that Plaintiff could not stand, lift/carry, drive a motor vehicle, or operate hand or foot controls for six to eight hours a day (Tr. 18). Moreover, Dr. Touma advised that Plaintiff could do no climbing, crouching, kneeling or crawling due to his left knee problems and that he could only occasionally balance or stoop (Tr. 18). However, as noted by the ALJ, Dr. Touma's treatment notes indicated that Plaintiff had no abnormalities of the spine, hands, or feet, and had no neurological deficits (Tr. 19, 387-391). Moreover, Dr. Touma's treatment notes revealed that, on May 20, 2003, the left knee showed only 120 degrees of flexion, full extension, and excellent quadriceps strength (Tr. 19). Dr. Touma's treatment notes, dated July 9, 2003, also reveal that the left knee showed full extension, flexion to 110 degrees, and good stability, and Plaintiff's gait was only minimally antalgic (Tr. 19). The Court concludes that the ALJ properly considered the findings in Dr. Touma's treatment notes both in rejecting Dr. Touma's opinion and in forming his RFC assessment that Plaintiff's impairments only limited Plaintiff to occasional balancing, stooping, crouching, kneeling, and crawling rather than none at all.

The ALJ also indicated that both treating physicians' opinions were contradicted by Plaintiff's daily activities (Tr. 19).  As noted by the ALJ, Plaintiff attends to his personal needs, drives, walks for exercise, takes care of his dog, visits neighbors, picks up small objects at the grocery store, and helps with dusting and washing dishes (Tr. 18).  Because the opinions of Drs. Shields and Touma are also inconsistent with the nonmedical evidence, the Court finds that the ALJ properly rejected their opinions.

While Plaintiff argues that the non-examining physician assessments adopted by the ALJ were not based on all available evidence (Plaintiff's Motion p. 10, 16), the Court finds this argument to be without merit.  Plaintiff apparently takes issue with the assessment of the non-examining physicians because they indicated that there were no treating or examining physician statements in the record at the time they rendered their opinions as to Plaintiff's RFC.  As correctly noted by the Defendant, Plaintiff did not submit his treating physicians' RFC statements in a timely manner (Tr. 34, 382, 387) (noting that Exhibits 16F and 17F are marked as "submitted subsequent to hearing").  Moreover, the Court finds that the ALJ properly considered and evaluated the state agency physician' opinions, noting that they were not binding on him and according them the appropriate weight as provided in SSR 96-6p (Tr. 18).

In sum, the Court concludes that although Plaintiff experienced some

difficulties with a variety of impairments, the ALJ properly concluded that the evidence does not establish that Plaintiff's condition was as limiting as opined by Dr. Shields and Dr. Touma. The record contains evidence which conflicts with the opinions of Plaintiff's treating physician, and the ALJ properly performed his duty as trier of fact in resolving the conflicting evidence. *Richardson v. Perales*, 402 U.S. 389, 399 (1971); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) ("This Court may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility."). Accordingly, the Court finds that the ALJ properly rejected the opinions of Dr. Shields and Dr. Touma, which the ALJ found to be unsupported by objective medical findings and inconsistent with the record as a whole. Thus, the ALJ's RFC assessment is supported by substantial evidence.

Plaintiff's second claim of error is that the ALJ failed to properly evaluate his subjective complaints of pain. It is well-established that "[a]n individuals statements as to 'pain or other symptoms will not alone establish that [she is] disabled.'" *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997), quoting 20 C.F.R. § 404.1529(a). Rather, in reviewing the ALJ's decision, courts must employ "a two-prong test to evaluate a claimant's assertions of disabling pain." *Id*. First, courts must consider "whether there is objective medical evidence of an underlying medical condition." *Id*. If there is such evidence, "we then examine: (1) whether objective medical evidence confirms the severity of the

alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the disabling pain." *Id*.

In the instant case, the ALJ determined that "the evidence reflects medically determinable impairments that could reasonably be expected to cause some of the pain and other symptoms the claimant alleges." (Tr. 15). Specifically, the ALJ considered Plaintiff's left knee impairments and the corresponding treatment measures, including surgeries, physical therapy, initial use of crutches and a cane (Tr. 15, 169-77, 180-83, 187, 191-210). However, the ALJ ultimately concluded that the objective medical evidence and Plaintiff's daily activities do not support the alleged severity of Plaintiff's complaints (Tr. 18). In doing so, the ALJ considered Plaintiff's credibility and determined that Plaintiff's allegations are "not fully credible." (Tr. 18).

It is well established that "[i]n evaluating complaints of pain, an ALJ may properly consider the credibility of the claimant." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). An ALJ's findings "based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness' demeanor and credibility." *Id*. In addition to judging credibility, the ALJ is charged with weighing the evidence before him. *Meyers v. Richardson*, 471 F.2d

1265, 1267 (6th Cir. 1972).

Plaintiff nonetheless asserts that his total knee replacement is a medical condition "of such severity to produce the alleged disabling pain" and points to his use a cane as proof of his pain. According to the Plaintiff, the ALJ provided no clear and convincing reasons for rejecting Plaintiff's testimony. The Court finds this argument to be without merit. Specifically, the ALJ properly considered the medical record and Plaintiff's daily activities but found that they belie Plaintiff's subjective complaints of pain. The ALJ determined to discount Plaintiff's credibility because Plaintiff denied having problems taking care of his personal needs, indicated he could drive by himself, taking care of the dog, visiting with neighbors, picking up items from the grocery store, dusting, and washing dishes (Tr. 18). Moreover, contrary to Plaintiff's assertions, the Court finds that credible medical evidence supports the ALJ's RFC assessment. In addition to Plaintiff's daily activities, the ALJ based his RFC assessment of Plaintiff's left knee restrictions on state agency doctors' opinions and the clinical findings in Dr. Touma's treatment notes, who noted that Plaintiff had "an antalgic limp."

As the ALJ set forth the reasons for finding Plaintiff's subjective allegations to be less than credible, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff's subjective allegations were excessive and not fully credible. The Court therefore concludes that Plaintiff's second claim of error is

without merit.

Plaintiff's third claim of error is that the ALJ failed to impose a restriction based on Plaintiff's asthma and environmental limitations in posing hypothetical questions to the VE. Having reviewed the record, the Court finds this to be a misrepresentation of the record.

The Administrative Law Judge may pose hypothetical questions to a VE and may rely upon the VE's answers to the hypothetical questions if substantial evidence supports the assumption included in the hypothetical question. *Hardaway v. Secretary of HHS*, 823 F.2d 922, 927-28 (1987). However, the ALJ is only required to incorporate only those limitations accepted as credible by the finder of fact. *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1235 (6th Cir. 1994). An ALJ's findings "based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness' demeanor and credibility." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997).

A review of the ALJ's decision reveals that the ALJ considered Plaintiff's asthma and noted that pulmonary function studies dated June 1, 2001, showed only mild obstructive disease with excellent response to bronchodilator (Tr. 15-16, 168, 258). Despite Plaintiff's representations to the contrary, the ALJ included Plaintiff's pulmonary impairment in his hypothetical question to the VE –

specifically, the ALJ asked the VE to assume that Plaintiff is mildly obese and suffers from asthma with mild air way obstruction (Tr. 63-64). The ALJ also gave the VE environmental limitations to accommodate Plaintiff's pulmonary impairment – the ALJ asked the VE whether Plaintiff would be able to perform work assuming he should avoid exposure to extreme heat and cold, fumes, odors, dust or gases (Tr. 63-64). Thus, the ALJ did not disregard evidence of Plaintiff's asthma or environmental limitations in posing the hypothetical, as maintained by Plaintiff.

In response to the ALJ's hypothetical question, which incorporated all of Plaintiff's credible limitations, the VE testified that there is a significant range of jobs at the light and sedentary levels, which exist in Kentucky and the national economy, that Plaintiff could still perform despite his limitations (Tr. 64-65). As Plaintiff failed to show that he has additional mental or physical limitations on his ability to work, the Court concludes that the assumptions included in the ALJ's hypothetical questions to the VE were supported by substantial evidence, and the ALJ properly relied on the VE's answers to his hypothetical question in determining that Plaintiff was disabled at Step 5 of the sequential evaluation process.

As stated *supra*, the ALJ's decision is not subject to reversal, "even if there is substantial evidence in the record that would have supported an opposite

conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997). The Plaintiff has failed to prove that the ALJ did not reach his conclusion based on substantial evidence.

### III. CONCLUSION

Accordingly, it is **HEREBY ORDERED** that the Plaintiff's Motion for Summary Judgment be **OVERRULED** and the Defendant's Motion for Summary Judgment be **SUSTAINED**. A judgment in favor of the Defendant will be entered contemporaneously herewith.

This August 31, 2005.

Signed By:
Henry R Wilhoit Jr.
United States District Judge